ROSEMARY HUDSON ROBERTS, WIDOW; ROSEMARY HUDSON ROBERTS,
GUARDIAN AD LITEM OF JESSICA GAY ROBERTS, MINOR DAUGH-
TER OF TIMOTHY LEE ROBERTS, DECEASED, EMPLOYEE/PLAINTIFFS
v. BURLINGTON INDUSTRIES, INC., EMPLOYER, AND LUMBERMEN'S
MUTUAL CASUALTY CO., CARRIER, DEFENDANTS

No. 387PA87

(Filed 3 February 1988)

**Master and Servant § 55.5— workers' compensation—death during emergency as-
sistance to stranger—injury not arising out of employment**

The death of a furniture designer who was struck by a vehicle as he
assisted an injured pedestrian who had no connection to the employee's duties
or his employer's business while returning home from a business trip did not
arise out of his employment since the designer's acts did not benefit the
employer to an appreciable extent, and the designer's employment did not in-
crease the risk that he would be struck by a car while assisting an injured
stranger with no relation to the employment.

Justice MARTIN dissenting.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a
decision of the Court of Appeals reported at 86 N.C. App. 126, 356
S.E. 2d 794 (1987), which reversed an opinion and award of the
North Carolina Industrial Commission that denied plaintiffs' claim
for workers' compensation. Heard in the Supreme Court 8
December 1987.

*McNairy, Clifford, Clendenin & Parks, by Harry H.
Clendenin, III, for plaintiff-appellees.*

*Smith Helms Mulliss & Moore, by J. Donald Cowan, Jr., and
Caroline H. Wyatt, for defendant-appellants.*

WHICHARD, Justice.

Decedent employee, while returning home from a business
trip, was struck by a car and killed as he assisted an injured
pedestrian who had no connection to the employee's duties or his
employer's business. The issue is whether his death arose out of
the employment and thus was compensable under the Workers'
Compensation Act, N.C.G.S. § 97-1 *et seq.* We hold that it did not.

Decedent, Timothy Lee Roberts, was employed by defendant
Burlington Industries, Inc. (Burlington) as a furniture designer in

its Furniture Division in Lexington. Burlington sells furniture exclusively to retailers; decedent's duties thus did not include any contact with the general public. He did, however, make occasional visits to retail furniture stores to inspect displayed furniture.

On 18 November 1982, decedent drove his private car from his home in Thomasville to the Greensboro Regional Airport. He met four other Burlington employees there, and they made a business trip to Burlington's plant in Robbinsville, North Carolina. They returned to Greensboro at 5:30 p.m. and left the airport around 5:45 p.m. in separate cars.

The record contains no evidence of decedent's activities during the next hour and a half. The parties stipulated that Burlington sold furniture to two retail stores located near the scene of the accident. On the date in question both stores were open from 5:45 p.m. to 7:30 p.m., and both were displaying Burlington's furniture.

At approximately 7:30 p.m., decedent drove down the entrance ramp toward I-85 South at the Holden Road Exit in Greensboro. Moments before he arrived, a car had struck a pedestrian who was walking down the ramp. David Smith was the first person to arrive at the scene. Decedent also stopped and offered to assist by contacting the authorities. He left the scene, notified the Highway Patrol, and returned in five to eight minutes.

Decedent then suggested that Smith move up the ramp to warn oncoming traffic. Decedent positioned himself near the pedestrian's body in order to direct cars away from it. While standing near the pedestrian's body, he was struck by a car. He died at the scene from the injuries thereby sustained.

Decedent's benevolent acts received some attention from the media. At least six newspapers and an industry magazine reported his tragic death. Three of these publications mentioned that decedent was employed by Burlington.

Decedent's widow and daughter brought this action seeking workers' compensation death benefits. Deputy Commissioner Shuping found that decedent was returning home by his normal route from a business trip and that the accident thus occurred in the course of the employment. He concluded, however, that the ac-

cident did not arise out of the employment, and he thus denied compensation. He based this conclusion on the following "findings of fact":

> 2. Decedent's untimely death, however, did not arise out of the same employment; but rather, arose from the entirely voluntary—albeit undisputedly commendable, humanitarian act of a good citizen and [S]amaritan in stopping to render assistance to an apparent total stranger and had absolutely no rational relationship to his duties as a furniture designer for defendant-employer nor was said employer, which only sold its furniture directly to retail outlets rather than to individual members of the public, to any extent appreciably benefited thereby whether directly or indirectly.

> . . . .

> 3. As a furniture designer decedent was primarily involved in the production, rather than the sales, end of defendant-employer[']s business which obviously did not require that he attempt to develop and foster the same personal contacts with potential customers as would have members of its sales force and, even then, such customers were not individual members of the public at large; but rather, representatives of the retail outlets to whom it exclusively sold furniture who would themselves not ordinarily have any direct personal contact with decedent. In any regard there is no evidence that the particular individual that decedent attempted to aid, who was himself an apparent total stranger, was a customer of defendant-Burlington Industries and based not only upon the above-described nature of its ordinary customers, but that the same [individual] was financially destitute, it can be reasonably inferred that he was not then, had never been nor would likely . . . be a customer thereof. There was similarly absolutely no evidence of record that the defendant-employer either directed or encouraged its employees to assist members of the general public that they encountered in distress or to otherwise take any direct action towards members of the general public so as to foster good will and thereby its business interest. At the time of stopping to assist [the individual], decedent was driving his own vehicle, as opposed to one of the defendant-

employer[']s which could be specifically identified as such and him as an employee thereof [who] ha[d] stopped to render aid at any accident scene by a member of the general public passing; but rather, unless someone had specifically asked him the nature of his employment or he had otherwise volunteered it, decedent's heroic act would have likely remained one of [an] [anonymous] stranger had he not been tragically killed, as a result of which he was identified in some, but not all, the stipulated newspaper article[s] as an employee of defendant-Burlington Industries; however, in the opinion of the undersigned, any resulting good will toward defendant-employer is too remote and immeasur[able] for his actions on this occasion to be considered of any appreciable, even indirect, benefit to said employer. Whether as a matter of public policy decedent should recover under the Workers' Compensation Act in order to foster similar acts of good [S]amarit[an]ism is beyond the Industrial Commission's authority to grant.

Plaintiffs appealed to the full Commission, which adopted as its own the Deputy Commissioner's opinion and award. The Commission majority summarized its position by stating:

In our opinion, the activity in which the employee was engaged at the time of death was a risk to which members of the general public are equally exposed outside of the employment.

. . . .

The risk was not created by the employment or a natural part of his employment as a furniture designer.

Commissioner Clay dissented.

Plaintiffs then appealed to the Court of Appeals. The Court of Appeals held that the injury did arise out of the employment, and accordingly it reversed the Commission. *Roberts v. Burlington Industries*, 86 N.C. App. 126, 356 S.E. 2d 794 (1987). It acknowledged a long line of cases which hold that a compensable injury cannot result from a risk "to which the employee would have been equally exposed apart from the employment." *Roberts v. Burlington Industries*, 86 N.C. App. at 135, 356 S.E. 2d at 800. It "found," however, that the hazard encountered by decedent

was not one to which the general public was equally exposed. *Id.* at 136, 356 S.E. 2d at 800. The selfless nature of decedent's act, the court stated, made it "not something generally done by all." *Id.* By taking affirmative humanitarian action, decedent willingly exposed himself to "hazards to which the general public is [not] equally exposed." *Id.* Moreover, the publicity surrounding decedent's benevolent acts benefited his employer "by increasing the employer's good will." *Id.* at 133, 356 S.E. 2d at 798. The court also noted that its holding would encourage humanitarian acts and thus benefit employers. *Id.* at 136, 356 S.E. 2d at 800.

An opinion and award of the Industrial Commission will only be disturbed upon the basis of a patent legal error. *Hoffman v. Truck Lines, Inc.,* 306 N.C. 502, 505, 293 S.E. 2d 807, 809 (1982). The legal error asserted here relates to the requirement that for a death by injury to be compensable under the Workers' Compensation Act, it must arise out of and in the course of the employment. N.C.G.S. § 97-2(6), (10) (1985). "Whether an injury arose out of and in the course of employment is a mixed question of law and fact, and where there is evidence to support the Commissioner's findings in this regard, we are bound by those findings." *Hoffman v. Truck Lines, Inc.,* 306 N.C. at 506, 293 S.E. 2d at 809-10, *quoting Barham v. Food World,* 300 N.C. 329, 331, 266 S.E. 2d 676, 678 (1980).

As used in the Workers' Compensation Act, the phrase "arising out of the employment" refers to the origin or cause of the accidental injury, while the words "in the course of the employment" refer to the time, place, and circumstances under which an accidental injury occurs. *Bartlett v. Duke University,* 284 N.C. 230, 233, 200 S.E. 2d 193, 194-95 (1973); *Robbins v. Nicholson,* 281 N.C. 234, 238, 188 S.E. 2d 350, 353 (1972). While often interrelated, the concepts of "arising out of" and "in the course of" the employment are distinct requirements, and a claimant must establish both to receive compensation. *Hoyle v. Isenhour Brick and Tile Co.,* 306 N.C. 248, 251, 293 S.E. 2d 196, 198 (1982).

The Deputy Commissioner concluded that decedent's death by injury arose in the course of his employment, and the full Commission adopted his conclusion. Burlington does not dispute this conclusion. Whether the "arising out of the employment" requirement has been met thus is the only issue presented.

To determine whether an injury or death by accident arose out of the employment, "it is necessary to examine the findings of specific crucial facts." *Perry v. Bakeries Co.*, 262 N.C. 272, 274, 136 S.E. 2d 643, 645 (1964). The basic question is whether the employment was a contributing cause of the injury. *See Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557, 117 S.E. 2d 476, 479 (1960).

An injury to an employee while he is performing acts for the benefit of third persons does not arise out of the employment unless the acts benefit the employer to an appreciable extent. *Lewis v. Tobacco Co.*, 260 N.C. 410, 412, 132 S.E. 2d 877, 880 (1963). "Basically, whether [a] claim is compensable turns upon whether the employee acts for the benefit of his employer to any appreciable extent or whether the employee acts solely for his own benefit or purpose or that of a third person." *Guest v. Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E. 2d 596, 600 (1955).[1] However, "[i]f the ultimate effect of claimant's helping others is to advance his own employer's work, . . . it should not matter whether the immediate beneficiary of the helpful activity is a . . . complete stranger." *Id., quoting* 1A A. Larson, *The Law of Workmen's Compensation* § 27.21.

The record here contains no evidence that anyone other than decedent involved in the events surrounding his accidental death had any connection to Burlington. So far as this record reveals, decedent acted solely for the benefit of a third party. We thus hold that his death did not arise out of the employment. *See Lewis v. Tobacco Co.*, 260 N.C. at 412, 132 S.E. 2d at 880.

The Court of Appeals found a benefit to the employer in the fact that several newspapers and a trade magazine publicized decedent's benevolent acts and referred to his Burlington affiliation. It admitted, however, that "the record does not show any direct benefit to Burlington from [decedent's] action . . . ." *Roberts v. Burlington Industries*, 86 N.C. App. at 133, 356 S.E. 2d at 799. Its conclusion that "the good will of Burlington can only have been benefited by having [decedent] in its employment," *id.*, thus is purely speculative and cannot serve as the basis for a

---

1. The Court in *Guest* faced both the "arising out of" and the "in the course of" requirements. Since it upheld an award of compensation by applying the quoted test, it necessarily found that the injury arose out of the employment.

holding that the appreciable benefit to the employer test was met.

Plaintiffs' reliance upon *Guest v. Iron & Metal Co.*, 241 N.C. 448, 85 S.E. 2d 596, is misplaced. In *Guest* we also addressed the compensability of an injury suffered by an employee while assisting a stranger. Pursuant to his employer's instructions, the employee in that case drove to the Greensboro Airport to fix a pair of flat tires on a truck. After replacing the inner tubes, he and a fellow employee located a filling station where they asked the operator for some "free air" to inflate the tires. The operator agreed, but while the employees were filling the first tire he asked them to help push a customer's stalled car. They complied with the request, and while they were pushing the car onto the highway an approaching car struck and severely injured the claimant-employee. *Guest*, 241 N.C. at 450, 85 S.E. 2d at 598. We upheld the Commission's award of compensation, explaining:

> Plaintiff and his co-employee were not customers. They asked for and received permission to get *free air*. The assistance extended by the filling station operator was for the benefit of their employer. In turn, the filling station operator requested plaintiff's aid in pushing off and starting his customer's car, then blocking access to his gas pumps. Reciprocal courtesies and assistance were requested and extended. . . . It is noteworthy that plaintiff, when he responded to the filling station operator's request for assistance, had not received the assistance needed to enable him to complete his service to his employer. Plaintiff had reasonable grounds to apprehend that his refusal to render the assistance requested of him might well have resulted in like refusal by the filling station operator.

*Id.* at 453, 85 S.E. 2d at 600.

The exchange of reciprocal assistance was the key to the holding in *Guest*. The injured employee there did not offer a gratuitous favor; rather, he had reason to believe that the continued use of the air hose to complete his mission for his employer was contingent upon an affirmative response to the station operator's request. Here, by contrast, defendant's offer of aid was prompted purely by humanitarian concern for an injured man's welfare. There was no conceivable *quid pro quo* of possible

benefit to the employer. Since decedent's sole purpose here was to assist a stranger in distress, *Guest* is clearly distinguishable, and the "reciprocal courtesies" analysis does not apply.[2]

The Court in *Guest* reserved for "an appropriate fact situation" the question of "whether an injury is compensable when an employee, a motorist, then in course of his employment, renders 'a courtesy of the road' to another motorist then in need of aid." *Guest*, 241 N.C. at 454, 85 S.E. 2d at 601. In dicta, it stated that "[t]he facts of [*Guest*] are distinguishable from cases where the act of the employee, characterized as 'chivalric,' or 'an errand of mercy,' or 'the act of a good Samaritan,' is wholly unrelated to the employment." *Id.* at 454-55, 85 S.E. 2d at 601. The implication from the dicta and the authority cited, *Sichterman v. Kent Storage Co.*, 217 Mich. 364, 186 N.W. 498 (1922), is that in such cases the injury is noncompensable.

The "appropriate fact situation" anticipated in *Guest* is presented here. Decedent's benevolent acts were a pure "courtesy of the road" and bore no relation to his employer's interests. We now hold that such purely altruistic actions, with no actual benefit to the employer, do not arise out of the employment. For supporting authority from other jurisdictions, see the following: *Comeau v. Maine Coastal Services*, 449 A. 2d 362 (Me. 1982); *Sichterman v. Kent Storage Co.*, 217 Mich. 364, 186 N.W. 498

---

2. A subsequent Court of Appeals decision relied on *Guest* and, like *Guest*, illustrates proper application of the employer benefit test. In *Lewis v. Insurance Co.*, 20 N.C. App. 247, 201 S.E. 2d 228 (1973), the employee insurance salesman stopped on the highway to help a policyholder who had run out of gas. While attempting to re-enter his car, he was struck by another car. *Lewis*, 20 N.C. App. at 248-50, 201 S.E. 2d at 229-30. The court relied upon the employer benefit rule as stated in *Guest* in affirming an award of compensation. *Id.* at 250, 201 S.E. 2d at 230. As an insurance salesman and collector, the employee was engaged in an "intensely personalized calling" which required frequent contact with his policyholders. "In a real sense, he was the insurance company as far as [the policyholders] were concerned, and any action on his part which built goodwill for him at the same time fostered goodwill for his employer." *Id.* at 250-51, 201 S.E. 2d at 230-31. Moreover, he had called on the policyholder the night before the accident, and during his visit he had begun negotiations to sell a policy to another family member. Thus, his actions also tended to promote the consummation of a specific sale. The court concluded that the employee acted for the benefit of his employer to a "substantial extent" and held that his accident was compensable. *Id.* at 250-51, 201 S.E. 2d at 230.

Unlike the employee there, decedent here encountered a situation which had absolutely no connection to his employment.

(1922); *Weidenbach v. Miller*, 237 Minn. 278, 55 N.W. 2d 289 (1952); *White v. Milk Producers, Inc.*, 496 P. 2d 1172 (Okla. 1972); *Marby Const. Co. v. Merritt*, 200 Okla. 560, 198 P. 2d 217 (1948); *Lennon Company v. Ridge*, 219 Tenn. 623, 412 S.W. 2d 638 (1967). *See also* 99 C.J.S., *Workmen's Compensation* § 224 (1958).

At times this Court has applied an "increased risk" analysis in determining whether the "arising out of the employment" requirement has been met. *See Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977); *Bartlett v. Duke University*, 284 N.C. 230, 200 S.E. 2d 193 (1973); *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E. 2d 350 (1972); *Bell v. Dewey Bros.*, 236 N.C. 280, 72 S.E. 2d 680 (1952). Under this approach, the injury arises out of the employment if a risk to which the employee was exposed because of the nature of the employment was a contributing proximate cause of the injury, and one to which the employee would not have been equally exposed apart from the employment. "[The] causative danger must be peculiar to the work and not common to the neighborhood." *Gallimore v. Marilyn's Shoes*, 292 N.C. at 404, 233 S.E. 2d at 532, *quoting Harden v. Furniture Co.*, 199 N.C. 733, 735, 155 S.E. 728, 730 (1930); *see also Bartlett v. Duke University*, 284 N.C. at 233, 200 S.E. 2d at 195.

Application of the increased risk test here would not render decedent's demise compensable. Decedent's employment did not increase the risk that he would be struck by a car while shielding an injured stranger with no relation to the employment. The risk was common to the neighborhood, not peculiar to the work.

One ground for the Court of Appeals' opinion was application of the "positional risk" doctrine, which holds that "[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of employment placed claimant in the position where he was injured." 1 A. Larson, *The Law of Workmen's Compensation* § 6.50 (1984). The court noted that "the conditions and obligations of [decedent's] employment put him in the position where he was killed." *Roberts v. Burlington Industries*, 86 N.C. App. at 134, 356 S.E. 2d at 799.

This Court, however, has never applied the "positional risk" doctrine to "benefit of third party" cases; rather, it has maintained the "employer benefit" approach. In *Bartlett v. Duke University*, we noted a Minnesota case in which the court held

that "an injury arises out of the employment if, after the event, it can be seen that the injury has its source in circumstances in which the employee's employment placed him." *Bartlett*, 284 N.C. at 235, 200 S.E. 2d at 196, *quoting Snyder v. General Paper Co.*, 277 Minn. 376, 383, 152 N.W. 2d 743, 748 (1967). We stated: "This broad generality is not the law in this jurisdiction." *Bartlett v. Duke University*, 284 N.C. at 235, 200 S.E. 2d at 196. Similarly, we have said that the employment may provide "a convenient opportunity" for the injury or death by accident without providing the cause. *Robbins v. Nicholson*, 281 N.C. at 240, 188 S.E. 2d at 354.

We have held that when an employee's duties require him to travel, the hazards of the journey are risks of the employment. *Hinkle v. Lexington*, 239 N.C. 105, 79 S.E. 2d 220 (1953). We have also stated that "an injury caused by a highway accident is compensable if the employee at the time of the accident is acting in the course of his employment and in the performance of some duty incident thereto." *Hardy v. Small*, 246 N.C. 581, 585, 99 S.E. 2d 862, 866 (1957). In *Bartlett*, however, we denied compensation for a choking death that occurred while the employee was eating out with a friend during a business trip. We explained that "eating is not peculiar to traveling" and that cases involving injuries sustained while "walking or riding from [a] hotel to a restaurant, while eating on the employer's premises, or which result from eating tainted food at a place where the employer required [an employee] to eat, are not pertinent . . . ." *Bartlett*, 284 N.C. at 234-35, 200 S.E. 2d at 196. Here, the required travel merely placed decedent in a position to seize the opportunity to rescue the injured pedestrian. His decision to render aid created the danger; the risk was not a hazard of the journey.

The Workers' Compensation Act "should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation"; however, "the rule of liberal construction cannot be employed to attribute to a provision of the act a meaning foreign to the plain and unmistakable words in which it is couched." *Guest v. Iron & Metal Co.*, 241 N.C. at 452, 85 S.E. 2d at 599, *quoting Johnson v. Hosiery Co.*, 199 N.C. 38, 40, 153 S.E. 591, 593 (1930) and *Henry v. Leather Co.*, 231 N.C. 477, 480, 57 S.E. 2d 760, 762-63 (1950). The Act was not intended to establish general insurance benefits. *Perry v.*

Roberts v. Burlington Industries

*Bakeries Co.*, 262 N.C. at 276, 136 S.E. 2d at 647, *quoting Duncan v. Charlotte*, 234 N.C. 86, 91, 66 S.E. 2d 22, 25 (1951). To grant compensation here would effectively remove the "arising out of the employment" requirement from the Act. *See Bartlett v. Duke University*, 284 N.C. at 235, 200 S.E. 2d at 196, *citing Snyder v. General Paper Co.*, 277 Minn. at 393, 152 N.W. 2d at 754 (Peterson, J., dissenting).

Accordingly, the decision of the Court of Appeals is reversed. The cause is remanded to that court with directions that it remand to the Industrial Commission for reinstatement of its opinion and award denying compensation.

Reversed and remanded.

Justice MARTIN dissenting.

Believing as I do that the law of North Carolina requires a conclusion that the death of Timothy Roberts arose out of his employment with Burlington Industries, I dissent from the holding of the majority to the contrary.

In determining whether a death by accident arose out of the employment, the basic question is whether the employment was a contributing cause of the injury. In this case the decision of the Court of Appeals finding that the death did arise out of the employment can be supported upon two theories.

### EMPLOYER BENEFIT THEORY

In *Guest v. Iron & Metal Co.*, 241 N.C. 448, 85 S.E. 2d 596 (1955), this Court held that if the acts of the employee benefit his employer to any appreciable extent, then the injury or death is compensable. "Appreciable" means "noticeable." The American Heritage Dictionary 64 (1980). It is not necessary that the benefit be measured in dollars or cents or by other quantitative methods. In our case, the assistance of Timothy Roberts to Mr. Winters, the man previously struck by an automobile, was related to his employment because Burlington Industries was benefited to an appreciable extent. The actions of Mr. Roberts, in which he tried to save the life of a stranger injured on the highway, benefited Burlington Industries by increasing the employer's goodwill.

To me, it is indisputable that Burlington's goodwill was benefited by the tragic events in question. This is demonstrated by the local and regional newspapers that carried the story.

The Lexington Dispatch printed:

A designer for Burlington Furniture in Lexington was killed on rain-slick Interstate 85 Thursday night after he stopped to direct traffic around the body of a pedestrian who had been fatally injured moments before.

. . . .

John Buckner, division personnel manager at Burlington, said this morning that Roberts had worked as a furniture designer for Burlington since July. "It is going to be a tragic loss for us. I just do not know the facts at this time . . . we are trying to gather facts at this time."

The Thomasville newspaper printed: "Roberts was a graduate of Fieldale-Collinsville High School and Kendall School of Design in Grand Rapids, Mich. He was employed as a furniture designer with Burlington Industries." Similar articles appeared in the Greensboro Daily News, the Greensboro Record, and the High Point Enterprise.

Also, in the December issue of *Furniture Today*, an article appeared concerning this accident which stated: "A 29-year-old staff designer for Burlington Furniture in Lexington, N.C., in the act of being a good Samaritan, was struck and killed as he attempted to aid a man lying on a busy interstate highway." The article was of three columns and contained a headline stating, BURLINGTON'S TIM ROBERTS [—] DESIGNER KILLED WHILE AIDING HURT MAN. *Furniture Today* is a trade publication generally circulated throughout the furniture industry. The majority's holding that these articles are too remote and too immeasurable to result in any benefit to Burlington is simply unsupported by this record. The goodwill of Burlington can only have been benefited by the publications presenting its employee in heroic proportions to the public and to the furniture industry.

### EMPLOYEE AT RISK

Under this theory, where a claimant's employment places him in a position of risk, injuries arising therefrom are compensable.

This is sometimes referred to by the scholars in workers' compensation as the positional risk doctrine. 1 A. Larson, *The Law of Workmen's Compensation* § 6.50 (1985). The United States Supreme Court, in reviewing an award under the Longshoremen's and Harbor Workers' Compensation Act, adopted the view that where injuries are sustained during acts in emergency, they are compensable if the employment places the employee in the emergency. *O'Leary v. Brown-Pacific-Maxon*, 340 U.S. 504, 95 L.Ed. 483 (1951). The employee in *O'Leary* was waiting for his employer's bus to take him from the work area when he saw or heard two men standing on the reefs beyond a channel off the coast of Guam signaling for help. He plunged into the water in an effort to swim the channel to rescue the two men but was overcome by the current and drowned. The Court approved the awarding of benefits, holding that the death arose out of the employment. The Court stated that workers' compensation is not confined by common law concepts of the scope of employment. The Court further held that a reasonable rescue attempt may be one of the risks of the employment and so covered by the Act. I find *O'Leary* to be a very convincing case in support of the claimant's argument in our case.

The employee at risk theory is no stranger to the law of North Carolina on workers' compensation. It was relied upon by the Court of Appeals in *Felton v. Hospital Guild*, 57 N.C. App. 33, 291 S.E. 2d 158, *aff'd per curiam without precedential value*, 307 N.C. 121, 296 S.E. 2d 297 (1982). *See Powers v. Lady's Funeral Home*, 57 N.C. App. 25, 290 S.E. 2d 720 (Martin, J., dissenting), *rev'd & remanded*, 306 N.C. 728, 295 S.E. 2d 473 (1982). In *Pittman v. Twin City Laundry*, 61 N.C. App. 468, 300 S.E. 2d 899 (1983), the court held that for an accident to "arise out of" the employment, it is necessary that the conditions or obligations of the employment put the employee in the position or at the place where the accident occurs. *See* 1 A. Larson, *The Law of Workmen's Compensation* § 6.50. *See also White v. Battleground Veterinary Hosp.*, 62 N.C. App. 720, 303 S.E. 2d 547, *disc. rev. denied*, 309 N.C. 325, 307 S.E. 2d 170 (1983). This Court in *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E. 2d 350 (1972), held that to be compensable the accident need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence. *See also Harden v. Fur-*

*niture Co.*, 199 N.C. 733, 155 S.E. 728 (1930). So, contrary to the majority's intimation, this theory has long been a part of workers' compensation law in North Carolina.

In applying the test to this case, it is clear that the conditions and obligations of Mr. Roberts' employment put him in the position where he was killed. He was required by his employment with Burlington to visit a furniture plant in Asheville, and to do so he had to fly from Greensboro to Asheville. He was required to drive himself to and from the airport. It was while he was on his way home that he encountered Mr. Winters, a stranger, in a dangerous position on the highway which required assistance from others. Mr. Roberts was killed in providing that assistance.

It is clear that an emergency existed and that Mr. Roberts perceived the situation to be an emergency.

Justice Cardozo made the famous pronouncement which is applicable to this case. "Danger invites rescue. The cry of distress is the summons to relief." *Wagner v. International Ry. Co.*, 232 N.Y. 176, 180, 133 N.E. 437, 437 (1921). Here the act of Tim Roberts in going to the rescue of Mr. Winters was the child of the occasion. Clearly Mr. Roberts' presence and actions were a result of his employment placing him in the position of risk. I have no quarrel with *Bartlett v. Duke University*, 284 N.C. 230, 200 S.E. 2d 193 (1973), relied upon by the majority, or cases of similar import. *Bartlett* and other such cases do not deal with situations where the claimant is injured by a risk not shared by the general public. Any member of the general public is likely to choke on a piece of meat or be bitten by a dog or injured by a criminal. These are all hazards common to the general public. However, Mr. Roberts' act was not a hazard common to the general public. His action was an affirmative act responding to the danger existing with respect to Mr. Winters. The very fact that the claimant's employment placed him at the place and under the conditions which caused him to respond to the emergency situation differentiates the case from those such as *Bartlett*. Here, Roberts' employment placed him at the scene of the dangerous emergency that invited rescue by him, which led to his death.

This Court has often held that when an employee's duties require him to travel, the hazards of the journey are risks of the employment. *E.g., Hinkle v. Lexington*, 239 N.C. 105, 79 S.E. 2d

220 (1953). Such is the case here. The majority's aberrant statement that Mr. Roberts' decision to render aid created the danger is contrary not only to law but to the facts and to human nature. The facts are that Mr. Winters had previously been struck by an automobile and was lying on the highway. The danger was that another vehicle might strike Winters as he lay on the highway and further injure him or perhaps even cause injuries to the occupants of such other automobile. That is the dangerous situation which Mr. Roberts faced and which in the conduct of human affairs cried out to him for rescue. The law recognizes these reactions of the human mind in tracing conduct to its consequences. Mr. Roberts' reaction was a normal reaction; he did what was natural and probable. The risk that Mr. Roberts might be faced with such a danger on his return home while about his employer's business was a hazard of the journey and is compensable. *Id.*

Allowing recovery in cases such as this supports a sound public policy that encourages employees to undertake "good Samaritan" acts of humanitarianism desirable in any enlightened society. *Luke* 10:30-36. Such a holding is also in accord with the principle of liberal construction of the Workers' Compensation Act that benefits should not be denied upon technical, narrow, and strict interpretation, *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760 (1950), and with the following decisions: *O'Leary v. Brown-Pacific-Maxon*, 340 U.S. 504, 95 L.Ed. 483; *Food Products Corp. v. Indus. Com'n*, 129 Ariz. 208, 630 P. 2d 31 (Ct. App. 1981); *D'Angeli's Case*, 369 Mass. 812, 343 N.E. 2d 368 (1976); *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888 (Miss. 1980). *See also* 1 A. Larson, *The Law of Workmen's Compensation* § 28.23 (1985). I vote to affirm the Court of Appeals.