PLAINTIFF'S CROSS APPEAL AND DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CROSS APPEAL
Deputy Commissioner Douglas E. Berger filed his Opinion and Award on August 9, 1996 wherein he found as fact the following: "17. At the time of his death, Luis Roman's average weekly wage was $516.18."
In a letter dated August 16, 1996, the Defendant-Appellants gave proper notice of appeal to the Full Commission from the August 9, 1996 Opinion and Award, on behalf of the defendants, and then timely filed a brief and Forms 44 in support of this appeal to the Full Commission. The Defendant-Appellants did not raise as an issue on appeal "Finding of Fact #17" of the Opinion and Award.
The Plaintiff-Appellee timely filed a reply brief to the Defendant-Appellant's brief, but did not dispute "Finding of Fact #17" of the Opinion and Award. The Plaintiff-Appellee never filed a notice of appeal to the Full Commission.
The Defendants received the Plaintiff's "Brief in Support of Cross-Appeal by Plaintiff-Appellee" on October 28, 1996, accompanied by a letter captioned "Petition for Expedited Hearing of Appeal", on behalf of the Plaintiff, and more than 15 days after the Opinion and Award was filed.
The Defendant-Appellants, Southland Transportation Company and Riscorp of North Carolina, moved that the Full Industrial Commission, pursuant to N.C. Gen. Stat. § 97-85 and Rules 609 and 701 of the Workers' Compensation Rules, dismiss the Plaintiff-Appellee's Cross-Appeal.
Pursuant to N.C. Gen. Stat. § 97-85, a party wishing to appeal from the Opinion and Award must give notice of that appeal within fifteen days from the date when notice of the award was given. Pursuant to Rule 701 of the Workers' Compensation Rules, a letter expressing an intent to appeal shall be considered notice of appeal to the Full Commission within the meaning of N.C. Gen. Stat. § 97-85, provided that it clearly specifies the order or opinion and award from which the appeal is taken.
Since the Plaintiff never gave notice of an appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-85 and Rule 701 of the Workers' Compensation Rules, the Plaintiff has waived his right to appeal from the Opinion and Award.
Further, the parties stipulated to a Form 22 Wage Chart reflecting the Plaintiff's average weekly wage and this wage chart was relied upon by the Deputy Commissioner in making "Finding of Fact #17" regarding the Plaintiff's average weekly wage.
ORDER
Upon Motion of the Defendant-Appellants and for good cause shown, the Full Commission herewith dismisses Plaintiff-Appellee's Cross-Appeal pursuant to Rule 609 and 701 of the Workers' Compensation Rules and N.C. Gen. Stat. § 97-85 for failure to provide notice of appeal within the time allowed by statute.
******************
A compensable injury must arise in the course of an activity related to the employment. An activity is related to the employment if it carries out the employer's purposes or advances his interests directly or indirectly. Even if an activity cannot be said in any sense to advance the employer's interests, it may still be in the course of employment if, in view of the nature of the employment environment, the characteristics of human nature, and the customs or practices of the particular employment, the activity is in fact an inherent part of the conditions of that employment. Larson, The Law of Workmen's Compensation, § 20.00, Chapter 5: "Course of Employment: Activity." Guest v. Iron Metal Co., 241 N.C. 448, at 452, 85 S.E.2d 596 (1955).
Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip.Larson, The Law of Workmen's Compensation, § 25.00. The North Carolina Supreme Court has held that when an employee's duties require him to travel, the hazards of the journey are risks of the employment. Hinkle v. Lexington, 239 N.C. 105, 79 S.E.2d 220
(1953).
An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment. Larson, The Law ofWorkmen's Compensation, § 27.00. Guest v. Iron Metal Co.,241 N.C. 448, at 452, 85 S.E.2d 596 (1955).
In this respect, the facts of the instant case correspond to those in Culpepper v. Fairfield Sapphire Valley, 93 N.C. App. 242,377 S.E.2d 777 (1989) where the Court of Appeals held that the claimant's injuries arose out of her employment because the injuries were causally connected to her employment, where an employee leaving work in her own car stopped to assist a guest of her employer who then assaulted her. The Court further held that "the conjunction of the time, place, and circumstance factors" brought the claimant's injuries within the course of her employment.
"A number of courts have gone to considerable lengths in upholding awards for injuries occurring in the course of miscellaneous Good Samaritan activities by employees, on the theory that the employer ultimately profited as a result of good will thus created." Larson, The Law of Workmen's Compensation L,
§ 27.20.
In a South Carolina case somewhat analogous to this, a supermarket employee, whose duties were those of a checking clerk and stock boy, was sent to a parking lot, across a street from the store, to retrieve shopping carts. As he returned, he observed two boys snatch the purse of a woman who was on the sidewalk approaching the entrance to the store. He gave chase, ran into a low fence, fell, and broke his arm. The woman had parked in the lot with the intention of shopping at the employer's store. There was no evidence, however, that the employee knew that the woman was a customer of the store. The court quoted and followed theLarson's Treatise statement that acts undertaken in good faith to serve the employer's interests, including Good Samaritan activities whose benefit would presumably take the form of goodwill toward the employer are considered within the course of employment and therefore compensable. Howell v. Kash Karry,264 S.C. 298, 214 S.E.2d 821 at 822 (1975).
"Any emergency or rescue activity is within the course of employment if the employer has an interest in the rescue. Injury incurred in the rescue of a stranger is compensable if the conditions of employment place claimant in a position which requires him by ordinary standards of humanity to undertake the rescue. Similarly, when the conditions of employment lead claimant to be pressed into public service to aid in pursuit of fugitives or the like, under circumstances in which claimant must perform the service as a public duty, he remains within the course of his employment. Larson, The Law of Workmen's Compensation,
§ 28.00. The employee at risk theory was relied upon by the North Carolina Court of Appeals in Felton v. Hospital Guild,57 N.C. App. 33, 291 S.E.2d 158, aff'd on a three to three vote per curiam decision which rendered the Court of Appeals' decision to be without precedential value, 307 N.C. 121, 296 S.E.2d 297 (1982).
The emergency public service doctrine is based, not primarily on the human obligation to help a fellow being in peril, but on the obligation as a citizen to take part in law enforcement.Larson, The Law of Workmen's Compensation, § 28.30.
The instant case is much more analogous to Guest v. Iron Metal Co., 241 N.C. 448, 85 S.E.2d 596 (1955) than to Roberts v.Burlington Industries, 321 N.C. 350, 364 S.E.2d 417 (1988). InGuest an employee drove to the Greensboro Airport to fix a pair of flat tires on a truck. After replacing the inner tubes, he and a fellow employee located a filling station where they asked the operator for some "free air" to inflate the tires. The operator agreed, but while the employees where filling the first tire, he asked them to help push a customer's stalled car. They complied with the request, and while they were pushing the car onto the highway, an approaching car struck and severely injured the claimant-employee. In upholding the Commission's award of compensation, the North Carolina Supreme Court held that "Basically, whether [a] claim is compensable turns upon whether the employee acts for the benefit of his employer to any appreciable extent or whether the employee acts solely for his own benefit or purpose or that of a third person." Guest v. Iron Metal Co., 241 N.C. 448, at 452, 85 S.E.2d 596 (1955) "Appreciable" means "noticeable." The American Heritage Dictionary 64 (1980). The actions of Mr. Roman, in which he tried to apprehend a fugitive at a truck stop where he expected to get fuel for his employer's vehicle with its accompanying receipt, benefited Southland Transportation Company by increasing the employer's goodwill as well as reciprocating assistance for that anticipated from the truck stop employees in helping him fulfill his employer's needs and requirements. In the Guest case the Court noted that:
 It is noteworthy that plaintiff, when he responded to the filling station operator's request for assistance, had not received the assistance needed to enable him to complete his service to his employer. Plaintiff had reasonable grounds to apprehend that his refusal to render the assistance requested of him might well have resulted in like refusal by the filling station operator. Guest v. Iron Metal Co., 241 N.C. 448, at 453, 85 S.E.2d 596 (1955).
In Roberts the North Carolina Supreme Court said that "The exchange of reciprocal assistance was the key to the holding inGuest." Moreover, in Roberts the Court pointed to the fact that the deceased was driving his own vehicle, was not engaged in an activity characteristic of his employment which was that of a furniture designer and not a vehicle driver, was without any employer encouragement to assist members of the public in need of assistance, and was not engaged in an activity of any benefit to his employer such as helping someone either directly or indirectly who might reasonably be expected to reciprocate by rendering his employer assistance either on the same or some other occasion.Roberts v. Burlington Industries, 321 N.C. 350, at 356,364 S.E.2d 417 (1988).
The facts of the instant case are similar to, but stronger than those in Guest. In the instant case the deceased was driving his employer's vehicle, was engaged in an activity characteristic of his employment — that of driving a truck —, was encouraged by his employer to assist members of the public whom he might encounter while driving who needed assistance, and was engaged in an activity at the time that was of benefit to his employer — getting fuel and a written receipt —, which activity necessitated the reciprocal assistance from the truck stop staff and which activity was incomplete at the time that the deceased rendered his assistance to the staff of the truck stop by pursuing the fugitive at the staff's behest, which resulted in his death.
In addition, in the instant case the deceased had stopped at a truck stop designated by his employer. The North Carolina Supreme Court's holding in Guest is controlling in the instant case.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties prior to and at the hearing before the Deputy Commissioner as
STIPULATIONS
1. Luis Alfredo Roman, deceased employee, (Roman) was killed at about midnight on April 7, 1994, at the Flying J Truck Stop in Gary, Indiana.
2. At the time of his death, Roman, was employed by the Employer Defendant as a long distance truck driver and had stopped at the Flying J Truck Stop which was en route from Chicago, Illinois to Rocky Mount, North Carolina.
3. At the time of Roman's death, the parties were bound by the North Carolina Workers' Compensation Act.
4. At the time of Roman's death, Riscorp of N.C. was the compensation carrier on the risk.
5. The Form 22 Wage Chart attached hereto shows the wages paid to Roman during the year 1994 in the amount of $6,268.08.
6. At the time of his death, Roman was married to Mayra E. Roman and they had four children, all of whom were dependent upon Roman as follows:
Age Relationship
Isid R. Roman 16-1/2 years Son
Noemi E. Roman 14 Daughter
Oscar A. Roman 10-1/2 Son
Jessica C. Roman 8-1/2 Daughter
7. The defendants' response to the plaintiff's Interrogatories and Request for Production of Documents may be admitted into evidence and considered by the Court in making its decision.
8. Plaintiff's Request for Admissions including the Stipulation of Facts contained in Request for Admission No. 1 and Exhibits 1 through 11 which are records of the Gary, Indiana Police Department are admitted and may be considered by the Court in making its decision.
9. The plaintiff will secure evidence of the burial expenses of the deceased employee for submission to the Court.
10. The issues to be determined by the Court are:
 a. Was Roman acting within the course and scope of his employment at the time of his death?
b. The amount of compensation due Roman's dependents.
11. Defendants response to the plaintiff's Interrogatories and Request for Production of Documents have been marked as "stipulated exhibit 2" and received into evidence.
12. Plaintiff's "Request for Admissions", including the "Stipulation of Facts" contained in "Request for Admission No. 1" and Exhibits 1 through 11 which are records of the Gary, Indiana Police Department have been marked as "stipulated exhibit 3" and received into evidence.
******************
Based upon all of the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. Deceased-employee, Luis Roman, was employed by the defendant-employer as a long distance truck driver. On April 7, 1994, Mr. Roman had been dispatched to pick up a load of furniture at Douglas Furniture in Chicago, Illinois, and was en route to Helig-Meyers Furniture in Rocky Mount, North Carolina.
2. Mr. Roman was authorized to charge the gasoline needed for the truck he drove for the defendant-employer at Flying J Truck Stops. After leaving Chicago on April 7, 1994, he stopped to purchase gas at the Flying J Truck Stop in Gary, Indiana.
3. The Flying J Truck Stop in Gary, Indiana was located on the normal route of travel for the delivery of shipments from Chicago, Illinois to Rocky Mount, North Carolina.
4. Mr. Roman had last purchased gas in Wytheville, Virginia on April 7, 1994.
5. The Flying J Truck Stop was a dangerous location prior to April 8, 1994. The Truck Stop had employed two armed security guards to provide security prior to April 8, 1994.
6. On or about April 8, 1994, at 12:00 a.m., Mr. Roman was located inside the Flying J convenience store-restaurant when Robert Bankston stole seventy dollars from an open cash register operated by Kathy Adams. Ms. Adams screamed for help. The fuel desk cashier, Dona Becker, was at the fuel desk counter inside the store when the robbery by Mr. Bankston took place. Ms. Becker "yelled,` stop him.'". (See police interview with Ms. Becker in set of documents marked "stipulated exhibit 2".) Ms. Becker ran out of the store at that time.
7. Pursuant to the screams of both Ms. Adams and Ms. Becker, Luis Roman and another truck driver chased Mr. Bankston out of the store. Bankston entered a Ford Escort and attempted to drive away. Mr. Roman grabbed the steering wheel of the Ford Escort and forced Bankston to drive in circles in the Flying J Truck Stop parking lot. At some point, Mr. Roman was able to position himself through the window of the Ford Escort on the driver's side.
8. Robert Bankston did not attempt to run over the security guards or anyone else during his escape attempt while operating the Ford Escort in the Flying J Truck Stop parking lot. Bankston did not threaten the security guards. The security guards did not yell any warnings prior to discharging their firearms.
9. Mr. Roman was shot and killed by one of the security guards while he was positioned inside the window of the Ford Escort.
10. The use of deadly force by one of the security guards employed by the Flying J Truck Stop while responding to a robbery was the proximate cause of Luis Roman's death.
11. Plaintiff's job duties included performing activities that will help the public like truck drivers better. The defendant-employer provided a driver's handbook and safety manual that expressly informed its employees that their jobs as truck drivers as well as the future of the company and the trucking industry depended upon good public relations.
12. Mr. Roman's attempt to apprehend Bankston is an activity that would improve the public perception of truck drivers. His actions were not for the benefit of a third party only, but, rather, were beneficial to his employer and to himself as his employer's employee.
13. On or about April 8, 1994, Mr. Roman had not yet purchased gas when the robbery took place at the Triangle J Truck Stop.
14. The defendant-employer required the plaintiff to maintain detailed records concerning fuel purchases. Plaintiff had to keep records that included the date of purchase, the name and address of the seller, number of gallons purchased, type of fuel purchased, price per gallon, and the unit number of the vehicle into which the fuel was placed or license number. Fuel receipts which contained alterations or erasures would not be accepted by the defendant-employer. These records had to be maintained in order to receive a credit for fuel tax paid by the defendant-employer and/or Mr. Roman. These records were also necessary to be maintained in order to answer any questions that might arise over tax deductions the defendant-employer would have taken for reimbursing Mr. Roman for fuel that he purchased to operate his truck.
15. Kathy Adams and/or Dona Becker would have been the likely persons to have provided the plaintiff with an acceptable receipt as well as an appropriate address for their employer. These two employees of the truck stop would have also likely served as witnesses if the defendant-employer had to respond to any questions from the IRS as to the accuracy of the fuel records that plaintiff would have provided to the defendant-employer had he not been killed prior to purchasing fuel for his truck.
16. At the time of his death, Luis Roman's average weekly wage was $516.18.
******************
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. On April 8, 1994, Luis Roman sustained a compensable injury by accident arising out of and in the course of his employment with the defendant-employer when he was mistakenly shot and killed by a security employee of the Triangle J Truck Stop in Gary, Indiana, while he was responding to another Triangle J Truck Stop employee's request for assistance in pursuing a fugitive who had robbed the truck stop. N.C. Gen. Stat. § 97-38. Guest v. Iron Metal Co., 241 N.C. 448, 85 S.E.2d 596 (1955).
2. Where the duties of his employment place an employee in a position increasing his risk of being in harm's way, the employee's injury or death resulting from injury while engaged in the performance of some duty incident to his employment while acting in the course of his employment is compensable under the Workers' Compensation Act. Allred v. Allred-Gardner, Inc.,253 N.C. 554, 117 S.E.2d 476 (1960). Guest v. Iron Metal Co.,241 N.C. 448, 85 S.E.2d 596 (1955).
3. Where an employee is injured while engaged in the performance of some duty incident to his employment while acting in the course of his employment for the benefit of his employer as well as for the benefit of any third party, the employee's resulting injury or death is compensable under the Workers' Compensation Act. Guest v. Iron Metal Co., 241 N.C. 448,85 S.E.2d 596 (1955).
4. Where a truck driver takes his employer's vehicle on a long distance assignment and in the course of his employment encounters an emergency situation to which he responds, for the benefit of his employer who had encouraged him to assist members of the public in need of assistance, resulting in his being injured or killed, the employee's resulting injury/death is compensable under the Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2, 29, and 38. Guest v. Iron Metal Co., 241 N.C. 448,85 S.E.2d 596 (1955).
5. Mayra Roman, Isid Roman, Noemi Roman, Oscar Roman, and Jessica Roman are entitled to receive equal shares of the entire compensation payable under the North Carolina's Workers' Compensation Act. N.C. Gen. Stat. § 97-39.
******************
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
AWARD
1. Defendants shall pay Mayra Roman, the sum of 68.82 per week for at least 400 weeks beginning April 8, 1994. The portion of this amount that has accrued shall be paid in a lump sum subject to the attorney's fees approved below.
2. Defendants shall pay to the mother as natural guardian of Isid Roman, Noemi Roman, Oscar Roman, and Jessica Roman, the minor children of Luis Roman, compensation at the rate of $68.82 per week per child for at least 400 weeks beginning April 8, 1994. Payments shall continue on behalf of Oscar Roman until he reaches the age of eighteen and Jessica Roman until she reaches the age of eighteen. The portion of this amount that has accrued shall be paid in a lump sum subject to the attorney's fees approved below.
3. Twenty-five percent of the amount awarded in paragraph 1 and 2 of this Award is hereby approved for counsel for the plaintiffs.
4. Defendants shall pay all medical expenses incurred by Luis Roman as a result of the April 8, 1994 injury by accident.
5. Defendants shall pay burial expenses, not to exceed $2,000.00 to the person or persons entitled thereto.
6. Defendant shall pay the costs.
 S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ COY M. VANCE COMMISSIONER
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER