The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employment relationship existed between plaintiff and defendant-employer at the time of plaintiff's injury on April 26, 2000.
2. On April 26, 2000, defendant-employer was subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On April 26, 2000, defendant-employer was insured by American Home Assurance.
4. Plaintiff returned to work on April 28, 2000 and lost only one day of work as a result of his April 26, 2000 injury.
5. The injuries to plaintiff's hand and arm were caused by the April 26, 2000 incident.
6. The parties stipulated into evidence as Stipulated Exhibit 1, plaintiff's medical records.
7. The parties stipulated into evidence as Stipulated Exhibit 2, plaintiff's medical bills.
8. The issue before the Commission is whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, and if so, to what benefits is he entitled.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was a 38-year-old male born April 3, 1963. Plaintiff graduated from a two-year paramedic college after finishing high school.
2. At the time of hearing before the Deputy Commissioner, plaintiff was employed by Wendell Printing and Typesetting where he began working on August 28, 2000 and where he earned an average weekly wage equal to or greater than his average weekly wage earned with defendant-employer at the time of his injury by accident.
3. Plaintiff became employed with defendant-employer in November 1998 and worked there through August 25, 2000. Plaintiff was employed in the photo lab as a lab tech. Plaintiff processed film orders, developed film, sold cameras and film and answered questions.
4. Defendant-employer has involvement with various charities including Meals on Wheels and the Children's Miracle Network. The participation of Wal-Mart employees in these programs is voluntary and employees clock out while volunteering. Associates or employees of Wal-Mart who volunteer to work with a particular program are coached as to procedures, rules and regulations. Employees who do not volunteer are not coached.
5. Plaintiff had not volunteered for the Meals on Wheels program prior to March 26, 2000. However, as of March 26, 2000, Patricia Dumeyer who worked in the photo lab had been delivering Meals on Wheels for a while. On that day, Ms. Dumeyer was unable to deliver the meals and requested that plaintiff deliver them for her.
6. Plaintiff had never received any training for Meals on Wheels. When plaintiff went to deliver the meals, he did not clock out and was wearing his nametag. As plaintiff was making his next to last delivery, he knocked on the door and there was no answer. Plaintiff knocked again. An elderly lady opened the door and appeared to be choking and coughing. Smoke billowed forth from the house. Plaintiff escorted the elderly lady from the house and returned inside to wake up and remove her adult grandson. Plaintiff then followed the smoke into the kitchen where a pot of grease on the kitchen stove was on fire with flames coming out of the pot up to the fan. Plaintiff picked up the pot of burning grease and placed it in the sink, splattering burning grease on both of his arms. Plaintiff sustained second to third degree burns on his left forearm and hand and a few burns on his right forearm and hand. Plaintiff's watchband and nametag were melted.
7. Plaintiff continued to his final delivery and returned to work immediately reporting his injury and requesting medical care. Plaintiff was instructed to return to work from the doctor quickly as his help was needed.
8. Plaintiff immediately went to Knightdale Primary Care where he was treated by Dr. Lyle Parker. Plaintiff's treatment involved ice packs, ointment, bandages, pain medication and following an infection of the wound and cellulitis, antibiotics. Plaintiff was referred to a dermatologist, but by that time defendant-employer had denied his claim and refused to pay for treatment. Plaintiff's medical bills have not been paid. Plaintiff last received medical treatment for his burns in August 2000. Plaintiff retains significant scarring on his left forearm and hand.
9. The Meals on Wheels program informs people to whom deliveries are made that an associate from Wal-Mart will be delivering their meals on Wednesday. However, there is no evidence of record that the elderly disabled woman or her son were customers of Wal-Mart. Plaintiff admitted that because meals were being delivered to the woman, it is likely that she was unable to leave her home very often which would include any trips to Wal-Mart.
10. Plaintiff made a one-time delivery of Meals on Wheels, without any instruction by defendant-employer as to rules and regulations, to an elderly stranger who was not likely a customer of defendant-employer Wal-Mart. Any resulting goodwill to defendant-employer is too remote and immeasurable for plaintiff's actions on this occasion to be considered of any direct or indirect appreciable benefit to defendant-employer.
11. Wal-Mart's refusal to pay plaintiff's medical bills and treatment after his heroic and humanitarian act is not commendable from a social and societal standpoint. However, plaintiff's heroic and commendable act of providing aid for purely humanitarian reasons to the elderly woman and her grandson by entering the home and removing a flaming pan of grease from the fire was a purely altruistic action with no direct or indirect benefit to defendant-employer and did not involve a reciprocal exchange of assistance which benefited defendant-employer. Accordingly, plaintiff's injury did not arise out of his employment.
12. Furthermore, plaintiff's employment as a photo lab technician did not increase his risk of being burned while helping a stranger with no relation to his employment.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
While plaintiff's actions were commendable and even heroic, while the legal result may be harsh, and while defendant-employer Wal-Mart's actions may not be admirable, plaintiff's injuries, by law, did not arise out of plaintiff's employment and he is therefore entitled to no compensation under the North Carolina Workers' Compensation Act. Robertsv. Burlington Industries, 321 N.C. 350 (1988); Guest v. Iron MetalCo., 241 N.C. 448 (1955); Roman v. Southland Transport, 131 N.C. App. 571
(1998).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of September 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER