***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan and enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The alleged date of injury is 11 September 2008.
2. As of 11 September 2008, an employer-employee relationship existed between plaintiff and defendant Jennie Campbell and John Bianucci d/b/a CYB Staffing Services, Inc. Defendant, Jennie Campbell and John Bianucci d/b/a CYB Staffing Services, Inc. are subject to the North Carolina Workers' Compensation Act.
3. On 11 September 2008, defendant-employer Jennie Campbell and John Bianucci d/b/a CYB Staffing Services, Inc., was insured by Liberty Mutual Insurance Company.
4. Defendant-employer Jennie Campbell and John Bianucci d/b/a CYB Staffing Services, Inc., regularly employed three or more employees on 11 September 2008.
5. Plaintiff's claim is for an injury to his back, which said claim has been denied by defendants.
 *********** ISSUES
1. Did plaintiff suffer an injury by accident on 11 September 2008, arising out of his employment with either Jennie Campbell and John Bianucci d/b/a CYB Staffing Services, Inc. or Maple Hill Homes and Bobby Crisp?
2. Were Defendants Maple Hill Homes and Bobby Crisp subject to the Act on 11 September 2008?
3. What is plaintiff's average weekly wage and compensation rate as it pertains to each of defendants? *Page 3 
4. What, if any, indemnity compensation and/or medical treatment is due to plaintiff from either defendant?
5. Whether plaintiff's claim is barred by his intoxication pursuant to N.C. Gen. Stat. § 97-12?
6. Whether defendants are entitled to a credit for plaintiff's portion of the mediator's fee?
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: I.C. Forms, discovery, medical records (Medical records supplemented post-hearing)
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Defendants' Exhibit #1: Mobile home contract
 b. Defendants' Exhibit #2: Sale of mobile home contract
 c. Defendants' Exhibit #3: List of receipts for part time workers
 d. Plaintiff's Exhibit #1: Statement of witness Bud Stone
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT *Page 4 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 34 years old. He was employed as a maintenance worker at Maple Hill Homes, a residential mobile home park.
2. Defendant Bobby Crisp d/b/a Maple Hill Homes (herein "defendant Crisp") owns the real property upon which Maple Hill Homes is located. Defendant Crisp also owns numerous mobile homes within Maple Hill Homes and rents such mobile homes and the lots upon which they are located to various people to use as their principal place of residence.
3. For a number of years prior to 2007, defendant Crisp had contracted with defendant Jennie Campbell and John Bianucci, d/b/a CYB Staffing Services, Inc.(herein "defendant CYB Staffing") to provide personnel to provide repair and maintenance services at Maple Hill Home, and he continued to do so at all times relevant to the issues raised herein.
4. In 2007, defendant Crisp retained Stacie Sanders to manage Maple Hill Homes. As compensation for managing Maple Hill Homes, defendant Crisp provided Stacie Sanders with a residence within this park. Plaintiff and Stacie Sanders reside together as a domestic couple, and plaintiff moved into the residence provided to Stacie Sanders by defendant Crisp in 2007. Soon after moving into this residence, plaintiff approached defendant Crisp and offered to perform all of the maintenance within Maple Hill Homes for a flat fee.
5. Plaintiff contends that he initially began working for defendant Crisp for $500.00 per week, paid in cash, without medical insurance. When plaintiff insisted on insurance, defendant Crisp referred him to defendant CYB Staffing, who placed plaintiff in the position for $300.00 per week. Plaintiff contends that defendant Crisp paid him $200.00 per week in cash to make up the difference. *Page 5 
6. Defendant Crisp maintains that he never paid plaintiff in cash and that he sent plaintiff to defendant CBY Staffing from the outset of their relationship. There is no documentary evidence to support either position, but the absence of evidence of payments from defendant Crisp to plaintiff gives the position of defendant Crisp greater weight.
7. Even if plaintiff is included as an employee of defendant Crisp, the evidence of record shows that the only other full time employee of defendant Crisp was Stacie Sanders. While there is evidence that some residents were permitted on occasion to assist plaintiff, these helpers varied greatly depending on availability and were not regular employees of defendant Crisp. When a resident assisted plaintiff on some maintenance project they were paid either in cash or by a lessening of their rent obligations.
8. Plaintiff purchased two mobile homes from Johnny Heath in July 2008. Both of these mobile homes were located on lots within Maple Hill Homes. One of these mobile homes was a 1986 Fleetwood, which plaintiff sold to defendant Crisp on 18 July 2008. The other mobile home was a 1972 mobile home which needed a great deal of repair in order to be habitable. Defendant Crisp told plaintiff that he was not interested in purchasing the 1972 mobile home in its then-current condition.
9. The evidence submitted shows that plaintiff purchased the 1972 mobile home from Johnny Heath; however, there is no evidence showing plaintiff sold the 1972 mobile home to defendant Crisp. The 1972 mobile home was located on Lot #70, and was the mobile home plaintiff was working on when he allegedly fell.
10. On the morning of 11 September 2008, plaintiff undertook to determine the source of a leak in the roof of the 1972 mobile home. It was raining at the time. Plaintiff solicited the assistance of Vincent Stone in finding and repairing the leak. After climbing onto *Page 6 
the roof and locating the leak, plaintiff stepped too close to the edge of the roof and rolled off of the roof onto a canopy. Plaintiff held onto the canopy for a short period of time and then fell approximately six feet to the ground.
11. There is some testimony that plaintiff smoked marijuana on the morning of 11 September 2008, prior to ascending the roof of the 1972 mobile home. There is no evidence other than conjecture that plaintiff's possible use of marijuana played any role in his falling from the roof.
12. Plaintiff has a history of back problems for which he received treatment from Dr. Mark Moody. Plaintiff initially presented to Dr. Moody on 31 October 2006, with complaints of right buttock and posterior leg pain. Dr. Moody noted there was no specific injury or incident which brought about the pain, and diagnosed plaintiff with degenerative disc disease at L4-5, L5-S1, as well as L1-L2. On 15 November 2006, Dr. Moody performed a right L4-5, L5-S1 microlumbar diskectomy. Plaintiff continued to complain of pain in December 2006. The last time plaintiff treated with Dr. Moody was 19 February 2007. Dr. Moody testified that he did not formally release plaintiff from his care; however, plaintiff did not return.
13. On 11 September 2008, plaintiff was seen in the Emergency Room of Mission Hospital in Asheville, North Carolina, where he reported a fall from the roof of a mobile home at his employer's place of business causing an injury to his back. He was given medications and told not to return to work. Testing revealed plaintiff to have a right central disc protrusion L4-5 and postoperative changes L5-S1 without complication. He was then released.
14. Plaintiff was next seen at Hendersonville Family Health Center where the history of the accidental fall from the roof of the motor home was documented and the impression given of "back pain, lumbar, with radiculopathy". Plaintiff was then referred to Dr. Moody at *Page 7 
Mountain Neurological. Dr. Moody treated plaintiff for a short period of time and then recused himself from any further treatment. It appears from Dr. Moody's notes that he and plaintiff had a disagreement over the issuance of additional pain medication.
15. Thereafter, plaintiff moved to Augusta, Georgia. He was seen at University Health in Augusta, Georgia, on 7 May 2009, 21 May 2009 and 19 June 2009. An MRI performed on 21 May 2009, revealed a recurrent disc herniation. Dr. J. Marc Guitton opined that based upon plaintiff's relation of events, the injury of 11 September 2008 was the cause of the back injury as seen on the MRI dated 19 June 2009.
16. Based upon the greater weight of the evidence, plaintiff's average weekly wage was $300.00, yielding a compensation rate of $200.00 per week.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Based upon the greater weight of the testimony, defendant Crisp did not have three or more employees regularly employed by him in the operation of Maple Hill Homes. Accordingly, he is not subject to the Workers' Compensation Act and the Industrial Commission does not have jurisdiction over this defendant. N.C. Gen. Stat. § 97-2(1).
2. Under the Workers' Compensation Act, the phrase "arising out of the employment" refers to the origin or cause of the accidental injury, while the words "in the course of the employment" refer to the time, place, and circumstances under which an accidental injury occurs. N.C. Gen. Stat. § 97-2(6); Roberts v. BurlingtonIndustries, Inc., 321 N.C. 350, 354, 364 S.E.2d 417, 420 (1988). While often interrelated, the concepts "arising out of" and "in the *Page 8 
course of" the employment are distinct requirements, and a claimant must establish both to receive compensation. Id.
3. Based upon the greater weight of the evidence, when plaintiff fell from the roof of the 1972 mobile home he was the sole owner of that mobile home and was working in furtherance of his being able to sell the mobile home. Accordingly, plaintiff's injuries did not arise out of or in the course of his employment with defendant CYB Staffing and he is not eligible for benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following:
 ORDER
1. Plaintiff's claims against both defendants is hereby DENIED.
2. Each party shall bear their own costs.
This the 14th day of May 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR *Page 9 
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1