***********
The Full Commission reviewed the prior Order and prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and following in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On July 9, 1999, an employment relationship existed between the plaintiff and House of Raeford Farms.
3. On July 9, 1999, defendant was self-insured with Key Risk Management Services acting as Third-Party Administrator.
4. Plaintiff's average weekly wage is to be determined by an Industrial Commission Form 22. (The Form 22 showed an average weekly wage of $261.15, which yields a compensation rate of $174.10 per week.)
5. Plaintiff's medicals regarding this claim are admitted into evidence as Stipulated Exhibit #2 and include the following providers:
a. Ambulance Call Report;
b. Cape Fear Valley Medical Center; and
c. Village Surgical Associates.
6. The following Industrial Commission Forms are admitted into evidence as Stipulated Exhibit #3: Forms 19 (2), 22 and 61.
7. The investigative report of Hoke County Sheriff's Department submitted after the hearing before the Deputy Commissioner shall be admitted into evidence as Stipulated Exhibit #4.
8. The deposition of Dr. Joel Horowitz is admitted into evidence.
9. The issues to be determined by the hearing before the Deputy Commissioner are whether plaintiff sustained a compensable injury on July 9, 1999; and, if so, is he entitled to temporary total disability from July 9, 1999 through August 15, 2000. Defendants further raise G. S. § 97-12 and credit for unemployment benefits pursuant to N.C. Gen. Stat. § 97-42.1.
 *********** RULING ON EVIDENTIARY MATTERS
Objections contained within the deposition of Dr. Horowitz are OVERRULED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On July 9, 1999 plaintiff was 24 years old and was employed by House of Raeford Farms as a non-cure mixer. This position required plaintiff to shovel turkey meat into a large tank, add ice, then put the mixture into a bowl where seasoning was added. House of Raeford Farms is engaged in the business of turkey processing.
2. Plaintiff was working his regular shift for House of Raeford Farms on July 9, 1999, when Leroy Smith, a fellow employee, initiated a verbal confrontation with plaintiff over plaintiff's use of a pallet jack that Smith considered his. Smith was not assigned a specific pallet jack and plaintiff was authorized to use any pallet jack as needed. After lunch, Smith came into the plaintiff's work area while plaintiff was shoveling meat. Smith initiated another verbal argument with plaintiff over talk about Smith, a supervisor, showing favoritism to a certain female employee. Both parties cursed at each other.
3. A few minutes later, Smith was talking with Ms. Queen Troy about moving some things for her when plaintiff was walking back to his mixer. Smith and plaintiff again cursed at one another. The two men approached each other and Ms. Troy moved between them. As plaintiff turned to walk away, Smith cut him on the neck with a hawksbill knife, inflicting a very deep, long and serious wound in plaintiff's neck.
4. There was no evidence that plaintiff was acting unusual on the day of his injury, and there was no evidence that plaintiff was intoxicated, nor that intoxication caused his injuries. Indeed, it was the action of Smith in cutting him on the neck with a hawksbill knife that was the sole cause of plaintiff's injuries. The friction and verbal arguments were initiated by Smith. Plaintiff did not know Smith prior to the confrontation and had had no contact with him outside of work or prior to the day in question. Smith's version of the confrontation is found not to be credible. Also found not credible is testimony in support of his version.
5. Plaintiff was found to have marijuana present in his system when tested at the hospital. However, there was no showing that this controlled substance contributed in any way to his injury. Plaintiff admitted to having smoked marijuana the previous Saturday. Since July 9, 1999 was a Friday, that would have been six days prior to the injury. Additionally, his blood test came out positive for benzodiazepine, a tranquilizer. It is likely that the drug was administered to him in the ambulance to keep him from going into shock. The tranquilizer likewise in no way contributed to plaintiff's injury.
5. Plaintiff and Smith had an argument over a pallet jack, and the anger from the pallet jack argument caused Smith to initiate his action against plaintiff. This cutting was not over a woman, but over talk about Smith, then a supervisor, allegedly showing favoritism toward an employee, and over plaintiff's being involved in the talk, or office "gossip" with respect to such alleged favoritism. In this respect, both the argument concerning the pallet jack and the argument concerning alleged favoritism are work-related and arose out of the employment.
6. Plaintiff received treatment and surgery at Cumberland County Memorial Hospital for his neck injuries and received follow-up treatment from Dr. Joel Horowitz. All such treatment was reasonable and necessary and was rendered to effect a cure, relieve pain and lessen the period of disability.
7. Plaintiff sustained a compensable injury during the course and scope of his employment with House of Raeford Farms. Because of this injury, he was unable to earn any wages from July 9, 1999 through August 15, 2000, although he did receive $1,710.10 in unemployment benefits. His average weekly wage was $261.15 and his compensation rate was $174.10 per week.
8. At the time of hearing before the Deputy Commissioner, Smith had felony assault charges pending in Hoke County for the assault on the plaintiff. Smith was out on bail and had returned to work for House of Raeford Farms.
 ***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. In order for a plaintiff to recover benefits under the Workers' Compensation Act, he must show that his injuries resulted from (1) an accident, (2) arising out of his employment, and (3) within the course of his employment. Rivera v. Trapp, 135 N.C. App. 296, 519 S.E.2d 777, 779
(1999); citing Pickrell v. Motor Convoy, Inc. 322 N.C. 363, 366,368 S.E.2d 582, 584 (1988). Under the Workers' Compensation Act, the term "arising out of the employment" refers to the origin or cause of the accidental injury, while the words "in the course of the employment" refer to the time, place, and circumstances under which an accidental injury occurs. Rivera, 519 S.E.2d at 780. Although distinct, the two are interrelated and cannot be applied entirely independently. Hoyle v.Isenhour Brick Tile Co., 306 N.C. 248, 252, 293 S.E.2d 196, 199
(1982). Rather, they are to be applied together to determine the issue of whether an accident is sufficiently work-related to come under the Act. Since the terms of the Act should be liberally construed in favor of compensation, deficiencies in one factor are sometimes allowed to be made up by strength in the other. Further, whether an injury arose out of and in the course of employment is a mixed question of law and fact.Roberts v. Burlington Industries, 321 N.C. 350, 354, 364 S.E.2d 417, 420
(1988).
2. In order for an injury to "arise out of employment" there must exist some causal connection between the injury and the employment.Rivera, 519 S.E.2d at 780, citing Hoyle v. Isenhour Brick and Tile Co.,306 N.C. 248, 252, 293 S.E.2d 196, 198 (1982). In other words, the employment must be a contributing cause or bear a reasonablerelationship to the employee's injuries. Rivera, at 780 (emphasis added). An injury is compensable under the Workers' Compensation Act if "it is fairly traceable to the employment" or "any reasonable relationship to the employment exists." Id. See also, Hoffman v. RyderTruck Lines. Inc., 306 N.C. 502, 293 S.E.2d 807, 810 (1982).
3. In the present case, plaintiff was working his regular shift for House of Raeford Farms when Leroy Smith, a fellow employee, initiated a verbal confrontation with him over the use of a pallet jack. After lunch, Smith came into the plaintiff's work area while plaintiff was shoveling meat. Smith initiated another verbal argument with plaintiff. As plaintiff was turning to return to work, Smith cut plaintiff's neck with a hawksbill knife. Where one employee is injured by the intentional tortuous actions of another employee, the law on this issue is clear. To be compensable, the accident need not have been foreseen or expected, but after the event, it must appear to have its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. Pittman v. Twin City Laundry Cleaners, 61 N.C. App. 468,300 S.E.2d 899, 902 (1983).The case law demonstrates that when the argument or friction between employees is related to the employment, then the accident will be compensable.
4. In Hegler v. Cannon Mills Co., 224 N.C. 669, 31 S.E.2d 918 (1944), there was friction and enmity between two employees, growing out of criticism of the work of one of them by the other and complaint thereof to the employer. Two days later, the employee whose work was criticized assaulted his fellow worker from anger and revenge over such criticism, which resulted in the death of the assaulted employee. The Supreme Court of North Carolina found that the employee's death was an accident in the course of his employment. Again, in Withers v. Black, 230 N.C. 428,53 S.E.2d 668 (1949), the Supreme Court held that the claimant had suffered a compensable injury when he was injured during work by a fellow worker's assault precipitated by the claimant's criticism of the quality of the fellow worker's job performance. The evidence disclosed that the two employees had no personal contact outside of the employment, and that the dispute between them arose over the work they were performing for their common employer.
In the present case, the employment put plaintiff in the position of arguing over the pallet jack, and it put plaintiff in the lunchroom where the ladies were talking. Plaintiff was exposed to neither Smith nor other employees who figured in the assault outside of his employment with House of Raeford Farms. But for his employment, plaintiff would not have been exposed to those arguments or to the assault with a knife.
5. On July 9, 1999, plaintiff sustained an injury as the direct result of an interruption of his normal work routine by the introduction of unusual conditions likely to result in unexpected consequences. This constituted an injury by accident arising out of and in the course of plaintiff's employment with House of Raeford Farms. N.C. Gen. Stat. § 97-2(6).
6. The Workers' Compensation Act does not prohibit benefits based on an employee's intoxication at the time of injury; intoxication mustproximately cause the injury in order to bar the employee's claim. On this affirmative defense, the burden of proof is upon the employer and not the employee. N.C. Gen. Stat. § 97-12. The question is not whether the plaintiff was intoxicated at the time of the accident, but whether the claimant's intoxication "was more probably than not a cause in fact of the accident." Creel v. Town of Dover, 126 N.C. App. 547,486 S.E.2d 478 (1997). Here, there was no showing that plaintiff's use of marijuana six days before the knifing by a fellow employee or the presence in his body after the knifing of a tranquilizer played any part in the confrontation at work or his injury at work.
7. There was no evidence that plaintiff's injuries were caused by a willful intention to injure or kill himself or another. The friction and verbal arguments were initiated by Smith. Plaintiff did not know him, and had had no contact with him outside of work, or prior to the day in question. N.C. Gen. Stat. § 97-12.
8. Plaintiff is entitled to receive at the expense of House of Raeford Farms all medical treatment resulting from his compensable injuries to the extent that such treatment effects a cure, reduces pain or lessens the period of disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
9. Plaintiff is entitled to compensation of $174.10 per week from July 9, 1999 through August 15, 2000, the period during which he was unable to earn any wages by reason of his compensable injuries. N.C. Gen. Stat. § 97-29.
10. The Industrial Commission may allow credit for unemployment compensation received by an employee during a period when compensation is ordered paid. In this case, a partial credit of 75% is proper since attorney fees of 25% will be deducted from plaintiff's worker's compensation disability pay. N.C. Gen. Stat. § 97-42.1
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff compensation in the amount of $10,097.70 for the wages he was unable to earn from July 9, 1999 through August 15, 2000. Defendant shall pay $2,524.43 of such amount directly to plaintiff's attorney as a reasonable fee. Defendant may deduct $1,282.58 from the remaining $7,573.27 as partial credit for unemployment benefits paid to plaintiff. Defendant shall also pay $1,398.14 to plaintiff as interest due plaintiff through July 17, 2002. If all amounts are not paid by July 17, 2002, interest will continue to accrue at the rate of 8 percent per year.
2. Defendant shall reimburse plaintiff and others who have paid medical bills resulting from plaintiff's compensable injuries and shall pay all future medical bills resulting from plaintiff's compensable injuries to the extent they result from treatment that reduces pain, effects a cure, or lessens any period of disability.
3. Defendant shall pay the costs.
This 28th day of June 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER