CAROLINE D'AQUISTO, Plaintiff v. MISSION ST. JOSEPH'S HEALTH SYSTEM, Employer, CAMBRIDGE INTEGRATED SERVICES, Servicing Agent, Defendants

No. COA04-1259

(Filed 5 July 2005)

## 1. Workers' Compensation— assault at work—arising from employment

The Industrial Commission properly concluded in a workers' compensation case that an assault arose out of plaintiff's employment as a cancer analyst at a hospital.

## 2. Workers' Compensation— credibility—responsibility of Commission

Determining credibility in a workers' compensation case is the responsibility of the Industrial Commission, not the appellate court, which does not reweigh the evidence. Furthermore, the

Commission does not have to explain its findings by attempting to distinguish the evidence or witnesses it finds credible.

**3. Workers' Compensation— characterization and weight of testimony—Commission's responsibility**

The Industrial Commission in a workers' compensation case did not mischaracterize certain testimony, although it did give less weight to the testimony. Determining credibility is the Commission's responsibility.

**4. Workers' Compensation— sanctions—investigation and defense of claim**

There was competent evidence to support the Industrial Commission's findings of fact regarding defendant's investigation and defense of a workers' compensation case and the Commission's imposition of sanctions under N.C.G.S. § 97-88.1.

**5. Workers' Compensation— shifting burden of proof—no citation to opinion of Full Commission**

The Industrial Commission did not place the burden of proof on defendants in a workers' compensation case. Although defendants cited pages from the transcript of the hearing before the Deputy Commissioner, they did not cite anything in the full Commission's opinion and award to demonstrate that it shifted the burden of proof.

**6. Workers' Compensation— acceptance of evidence—credibility determination—responsibility of Commission**

The acceptance of evidence by the Industrial Commission in a workers' compensation case, and the discounting of other evidence, was a credibility determination rather than the application of a standard of proof, and lies solely with the Commission. Furthermore, the Commission does not have to explain its findings by distinguishing the evidence it does or does not find credible.

**7. Workers' Compensation— burden of proof—Commission rule-making authority**

Rule 601 of the Workers' Compensation Rules does not impermissibly shift the burden of proof and deny defendants' due process. The General Assembly has specifically vested the Industrial Commission with the ability to make rules governing Workers' Compensation cases. Defendants neither made arguments nor cited authority for denial of due process.

Appeal by Defendants from Opinion and Award entered 20 May 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 June 2005.

*Ganly & Ramer, P.L.L.C., by Thomas F. Ramer, for plaintiff-appellee.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Allan R. Tarleton, for defendants-appellants.*

WYNN, Judge.

Under the Workers' Compensation Act, an injury is only compensable if it is the result of an "accident arising out of and in the course of the employment[.]" N.C. Gen. Stat. § 97-2(6) (2004). In this case, the employer acknowledges that an assault upon Plaintiff-employee occurred "in the course of" her employment but argues that it did not "arise out of" her employment. For the reasons given in *Wake County Hosp. Sys., Inc. v. Safety Nat'l Cas. Corp.*, 127 N.C. App. 33, 487 S.E.2d 789, *disc. review denied*, 347 N.C. 410, 494 S.E.2d 600 (1997), we hold that the full Commission properly concluded that the assault "arose out of" Plaintiff's employment. We further uphold the full Commission's Opinion and Award on the remaining issues presented on appeal.

The record on appeal shows that on 30 April 2001, Plaintiff Caroline D'Aquisto, a cancer analyst at Defendant Mission St. Joseph's Health System ("Mission Health System"), arrived at her office at approximately 6:00 a.m. At approximately 7:15 a.m. Ms. D'Aquisto left her office on the first floor to go to the morgue on the second floor. She carried paperwork needed to confirm the causes of death of individuals who had died the previous week.

While Ms. D'Aquisto waited in front of the first floor main staff elevators, a man wearing green scrubs approached her. After exchanging a few words, the man walked up to her and said, "Selene . . . We're going to finish it." Ms. D'Aquisto testified that he grabbed her breasts and nipples, turned them, and brought her to her knees. Ms. D'Aquisto broke away and ran into the stairwell. But the man pursued her, grabbed her from behind, grabbed her hair and her groin area, and pulled her down the steps. Ultimately, Ms. D'Aquisto broke free, ran up the steps to the second floor, opened the door, and fell into the arms of a co-worker, A.J. Ward.

Mr. Ward, a twenty-one year employee at Mission Health System, corroborated Ms. D'Aquisto's testimony, stating that she came out

of the stairwell with a man behind her "[a]nd it seemed like he was over the top of her trying to—trying to grab her again[.]" Ms. D'Aquisto fell into his arms and said "A.J., I don't know the man." The man ran away.

After the incident, Ms. D'Aquisto returned to her office and provided an account of the assault to security personnel. Ms. D'Aquisto then filled out a security incident report. Later that morning, Ms. D'Aquisto reported the incident to the Asheville Police Department.

The next day, Ms. D'Aquisto met with Linda Anderson, director of post-op surgical services, and Jerri Mitchell, director of endoscopy. Ms. Anderson testified that Ms. D'Aquisto was very upset, had several torn fingernails, scrapes on her shins, and a "hand print" bruise on a breast. Ms. Mitchell testified that she observed "some bruises on her chest and on her breasts and they were pretty impressive."

After the incident, Mission Health System sent out an e-mail alerting employees that an employee had been "inappropriately touched." The employee newspaper later described it as a more violent attack.

On 21 May 2001, Mission Health System security notified Ms. D'Aquisto that the alleged attacker had been spotted on the hospital premises and she and Mr. Ward were asked to identify him. Mr. Ward positively identified the man, who was later determined to be Charles Greene, a sitter[1] for Diversified Personnel. Mr. Greene was later charged with assault and found not guilty.

On 25 May 2001, Karen Blicher, Director of Mental Health Education at Mountain Area Health Education Center specializing in women's psychological issues including sexual assault, evaluated Ms. D'Aquisto. Ms. Blicher testified that "by the end of that first interview it was very clear to me that she was experiencing posttraumatic stress disorder of the acute kind." On 29 May 2001, Ms. Blicher recommended that Ms. D'Aquisto take a week off of work.

On 31 May 2001, Dr. Steven Mendelsohn, a board-certified internist and rheumatologist, evaluated Ms. D'Aquisto. He found:

That her neck was very stiff compared to before [the assault]. She had a lot of muscle spasms around the neck, extending across the shoulders and into the back. She had a slight loss of movement in

---

1. A sitter is privately hired by the patient and/or patient's family to sit in the hospital room with the patient. The family hired Mr. Greene through Diversified Personnel. Mr. Greene was not an employee of Mission Health System.

D'AQUISTO v. MISSION ST. JOSEPH'S HEALTH SYS.

[171 N.C. App. 216 (2005)]

both shoulders. And her upper and lower back were quite sore. She had diffuse old bruises in her chest wall, and her lower back was quite tender.

Dr. Mendelsohn prescribed an anti-depressant, anti-inflammatories, pain medication, and sleeping pills. On 13 June 2001, Dr. Mendelsohn gave Ms. D'Aquisto a written note taking her out of work for a month.

On 4 June 2001, Dr. Karen Dedman, a family-practice physician, examined Ms. D'Aquisto who reported that she "was having vomiting, was terrified, not sleeping, roaring in her ears, coughing to the point of vomiting." Dr. Dedman observed fading bruises on her breast, upper abdomen, and in her left groin. Dr. Dedman diagnosed Ms. D'Aquisto with "severe acute stress reaction" and felt she was unable to work. Dr. Dedman testified that as a result of the assault Ms. D'Aquisto "had a severe stress reaction psychologically[,] . . . an exacerbation of her underlying left neck pain with underlying degenerative disk disease[,]" psoriasis, psoriatic arthritis, sleep disorder, and panic attacks.

In September 2001, Ms. D'Aquisto began seeing Dr. William Anixter, a psychiatrist. After the initial visits, Dr. Anixter diagnosed Ms. D'Aquisto with posttraumatic stress disorder, chronic type. Upon continued treatment, Dr. Anixter also diagnosed Ms. D'Aquisto with depression which was caused by many events, which included the assault, criminal trial, her sister's death, and her husband's disappearance. Dr. Anixter testified that Ms. D'Aquisto was unable to work and prescribed for her various anti-depressants and anti-anxiety medication.

Dr. Claudia Coleman, a psychologist, examined Ms. D'Aquisto at the request of Mission Health System's counsel. Dr. Coleman performed two tests on Ms. D'Aquisto and examined her history, but did not have any notes from Dr. Anixter at the time she made her report nor did she have an accurate history of Ms. D'Aquisto's past treatment for depression. At the time of the examination, Ms. D'Aquisto was taking a variety of medications. Dr. Coleman was unable to give an opinion to any degree of medical certainty about the origin of Ms. D'Aquisto's panic attacks. Dr. Coleman opined that Ms. D'Aquisto did not have posttraumatic stress disorder, but "anxiety disorder, not otherwise specified, in partial remission with dependent personality traits."

This case came for hearing before Deputy Commissioner Edward Garner, Jr. who awarded Ms. D'Aquisto ongoing total dis-

**D'AQUISTO v. MISSION ST. JOSEPH'S HEALTH SYS.**

[171 N.C. App. 216 (2005)]

ability compensation, medical and psychological expenses, and ordered Mission Health System to pay costs and attorney's fees. On 20 May 2004, the full Commission filed an Opinion and Award affirming the prior award. Defendants—Mission Health System and its insurance carrier servicing agent, Cambridge Integrated Services, Inc.—appealed.

---

On appeal[2], Defendants argue that the full Commission erred by (1) concluding that Ms. D'Aquisto's assault arose out of her employment; (2) disregarding competent evidence; (3) making findings of fact unsupported by competent evidence; and (4) imposing sanctions against Defendants. Defendants also argue that the Industrial Commission's rules and standards of assessing evidence deprived Defendants of due process. We disagree.

[1] First, Defendants argue that the full Commission erred in concluding that Ms. D'Aquisto's assault arose out of her employment.

Under the Workers' Compensation Act, an injury is compensable only if it is the result of an "accident arising out of and in the course of the employment[.]" N.C. Gen. Stat. § 97-2(6) (2004). "Whether an injury arose out of and in the course of employment is a mixed question of law and fact, and the Industrial Commission's findings in this regard are conclusive on appeal if supported by competent evidence." *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, 247, 377 S.E.2d 777, 780, *aff'd*, 325 N.C. 702, 386 S.E.2d 174 (1989) (citing *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)). The employee must establish both the "arising out of" and "in the course of" requirements to be entitled to compensation. *Roberts*

---

2. The standard of review for this Court in reviewing an appeal from the full Commission is limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Our review " 'goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted). The full Commission's findings of fact "are conclusive on appeal when supported by competent evidence," even if there is evidence to support a contrary finding, *Morrison v. Burlington Indus.*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). It is not the job of this Court to re-weigh the evidence. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. Further, all evidence must be taken in the light most favorable to the plaintiff, and the plaintiff "is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Deese*, 352 N.C. at 115, 530 S.E.2d at 553.

*v. Burlington Indus., Inc.*, 321 N.C. 350, 354, 364 S.E.2d 417, 420 (1988). Defendants conceded at the hearing that the assault occurred "in the course of" Ms. D'Aquisto's employment, but contend that it did not "arise out of" her employment.

The words "arising out of the employment" refer to the origin or cause of the accidental injury. *Roberts*, 321 N.C. at 354, 364 S.E.2d at 420. Thus, our first inquiry "is whether the employment was a contributing cause of the injury." *Id.* at 355, 364 S.E.2d at 421.

The record on appeal shows that as a part of her regular job duties Ms. D'Aquisto had to leave her office and walk to the morgue, which was located on another floor. Therefore, her reason for walking to the morgue that day was for the purpose of performing her job. *See Culpepper*, 93 N.C. App. at 248-49, 377 S.E.2d at 781 (the plaintiff was sexually assaulted after she stopped to help a guest with car trouble because she had been directed to always be helpful to guests; since her decision to stop had its origin in her employment the injuries arose out of her employment). This evidence supports the full Commission's determination that Ms. D'Aquisto's employment was a contributing cause of the injury.

"Second, a contributing proximate cause of the injury must be a *risk* inherent or incidental to the employment, and must be one to which the employee would not have been equally exposed apart from the employment." *Id.* at 248, 377 S.E.2d at 781 (citing *Gallimore*, 292 N.C. at 404, 233 S.E.2d at 533). Under this "increased risk" analysis, the "causative danger must be peculiar to the work and not common to the neighborhood." *Gallimore*, 292 N.C. at 404, 233 S.E.2d at 533 (citation omitted).

The full Commission relied on *Wake County Hosp. Sys., Inc.*, 127 N.C. App. 33, 487 S.E.2d 789, in concluding that Ms. D'Aquisto's injuries arose out of her employment. In *Wake County*, the employee was "abducted from the employee parking lot, she was assaulted and killed on an adjacent street, she was carrying work materials, and the assailant was a co-employee." *Id.* at 39, 487 S.E.2d at 792. This Court held that, following the reasoning in *Culpepper*, the facts were sufficient to show a causal relationship between the employee's employment and her death. *Id.* at 39-40, 487 S.E.2d at 792; *see also Culpepper*, 93 N.C. App. at 249-50, 377 S.E.2d at 782 (the plaintiff's injuries arose out of her employment because the nature of the plaintiff's employment as a cocktail waitress placed her at an increased risk of sexual assault not shared by the general public); *Pittman v.*

*Twin City Laundry & Cleaners*, 61 N.C. App. 468, 473, 300 S.E.2d 899, 902 (1983) (employee's death arose out of his employment where he was working at the time of the shooting, the shooting occurred on the employer's premises, and the shooting was caused by an argument between two co-employees); *but see Gallimore*, 292 N.C. at 404-05, 233 S.E.2d at 533 (employee's assault and death did not arise out of her employment where employee had completed work at a store in a mall, was not carrying any work materials, and was assaulted in the mall parking lot).

The full Commission found that Ms. D'Aquisto was at an "increased risk" for an assault not because of the nature of her job, but because her job duties required her to walk to areas of the hospital where there were "few, if any, people in her vicinity." Nonetheless, Defendants argue that no competent evidence supported the full Commission's finding of fact number twenty-six that Ms. D'Aquisto's work takes her to areas of the hospital where there are few people. Finding of fact twenty-six states:

\*\*\*

26. Regardless of whether or not Mr. Greene was plaintiff's assailant, the Full Commission finds that a man wearing scrubs at Mission had the appearance of a legitimate business purpose in being there. Although the majority of plaintiff's work did occur at her desk, her job duties required her to carry business records to the morgue on a regular basis, causing her to be present in areas of the hospital with few, if any, people in her vicinity. Thus, the Full Commission finds that plaintiff was as an increased risk of being exposed to an assailant not by virtue of her job as a cancer analyst, but rather because of where her job duties took her—the morgue and other such places with few, if any, people in her vicinity.

\*\*\*

We, however, find that the record on appeal shows competent evidence to support the finding that Ms. D'Aquisto's job duties took her out of her office to other areas of the hospital. Indeed, Ms. D'Aquisto testified that a part of her normal job duties required her to go to the morgue every Monday to verify causes of death. Her office was on the first floor and the morgue is on the second floor, causing her to have to either use a stairwell or wait for an elevator. The record shows that Ms. D'Aquisto was assaulted in front of the staff elevators on the first

floor, with no person visible to Ms. D'Aquisto but the man who assaulted her. The staff elevators are at least "[a] football field" away from the main hospital lobby and behind the patient elevators. At approximately 7:15 a.m. when Ms. D'Aquisto was waiting for the elevators the lights were still dim at the lobby entrance. On the morning Ms. D'Aquisto was assaulted, Mr. Ward testified that, "At that time, it wasn't too busy that morning[.]"

As Plaintiff "is entitled to the benefit of every reasonable inference to be drawn from the evidence[,]" *Deese*, 352 N.C. at 115, 530 S.E.2d at 553, this evidence supports the full Commission's finding that on the morning of 30 April 2001, Ms. D'Aquisto's job duties took her to an area of the hospital where there were few other people around. Moreover, the record shows competent evidence to support finding that Ms. D'Aquisto was at an "increased risk," assaulted inside the hospital, carrying business records at the time, and by a man wearing scrubs who appeared to have legitimate business at the hospital. Accordingly, we hold that the full Commission properly concluded that the assault "arose out of" her employment. *See Wake County Hosp. Sys., Inc.*, 127 N.C. App. at 39, 487 S.E.2d at 792.

[2] Second, Defendants argue that the full Commission erred in impermissibly disregarding competent evidence as to whether the assault on Ms. D'Aquisto actually occurred and as to Ms. D'Aquisto's credibility and demeanor. Determining credibility of witnesses is the responsibility of the full Commission, not this Court. *Adams*, 349 N.C. at 681, 509 S.E.2d at 413. This Court does not re-weigh the evidence. *Id.*, 509 S.E.2d at 414. Furthermore, "the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible." *Deese*, 352·N.C. at 116, 530 S.E.2d at 553. Thus, we hold that this argument is without merit.

[3] Third, Defendants argue that a portion of finding of fact number forty-five mischaracterizes Dr. Coleman's testimony and is not supported by competent evidence. Finding of fact forty-five, in pertinent part, states:

\*\*\*

45. . . . However, when presented with the actual findings of fact, including the eyewitness testimony of A.J. Ward, Dr. Coleman admitted that the attack could not have been a dissociative episode.

\*\*\*

Dr. Coleman testified as follows:

Q: My question is, if that's true—if, for example, A. J. Ward, who's an employee, says they fell out into my arms and the guy ran away and he was reaching toward her breasts, that's not a dissociative episode, that's a physical act, isn't it?

A: Your description of it is a physical act. That's absolutely true.

Q: And if that were true, if a judge has said that is what happened, that would not be a dissociative episode.

A: That part of it, no.

\*\*\*

Q: . . . But if those are the facts as testified by Ms. D'Aquisto and Mr. A. J. Ward, who now you've got a third person who was either engaged in a dissociative episode with her—

A: No. You have someone that saw part of her story.

Mr. Ward testified that Ms. D'Aquisto came out of the stairwell with a man behind her "[a]nd it seemed like he was over the top of her trying to—trying to grab her again[.]" Ms. D'Aquisto fell into his arms and the man ran away. Dr. Coleman testified that since there was an eyewitness, at least the portion of the assault—Ms. D'Aquisto coming out of a stairwell with a man trying to grab her from behind—could not have been a dissociative episode.

We hold that the full Commission did not mischaracterize Dr. Coleman's testimony. Although the full Commission afforded less weight to Dr. Coleman's testimony, determining credibility of witnesses is the responsibility of the full Commission, not this Court. *Adams*, 349 N.C. at 681, 509 S.E.2d at 413.

[4] Next, Defendants argue that the findings of facts concerning its investigation and defense are not supported by competent evidence and that the full Commission erred by imposing sanctions against Defendants under section 97-88.1 of the North Carolina General Statutes.[3] We disagree.

The Industrial Commission may assess costs and attorney's fees if it determines that "any hearing has been brought, prosecuted, or

---

3. We note that Plaintiff-Appellee's brief exceeded the page limitations for briefs filed in the North Carolina Court of Appeals. N.C. R. App. P. 28(j) (thirty-five page limit). Therefore, we do not consider that portion of the brief which exceeds the page limitation.

defended without reasonable ground[.]" N.C. Gen. Stat. § 97-88.1 (2004). "The decision of whether to make such an award, and the amount of the award, is in the discretion of the Commission, and its award or denial of an award will not be disturbed absent an abuse of discretion." *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 54-55, 464 S.E.2d 481, 486 (1995), *disc. review denied*, 343 N.C. 516, 472 S.E.2d 26 (1996). An abuse of discretion results only where a decision is " 'manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *Long v. Harris*, 137 N.C. App. 461, 465, 528 S.E.2d 633, 635 (2000) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)). "In determining whether a hearing has been defended without reasonable ground, the Commission (and a reviewing court) must look to the evidence introduced at the hearing. 'The test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness.' " *Cooke v. P.H. Glatfelter/Ecusta*, 130 N.C. App. 220, 225, 502 S.E.2d 419, 422-23 (1998) (quoting *Sparks v. Mountain Breeze Rest.*, 55 N.C. App. 663, 665, 286 S.E.2d 575, 576 (1982)). Defendants argue that they had reasonable ground to defend themselves as there were "doubts about the relationship between Plaintiff's injuries and her story of an assault on April 30 (sic) . . . ." (Def. Br. 33).

Defendants contest the following findings of fact related to the award of costs and attorney's fees:

46. Defendants presented no witnesses at hearing before the Deputy Commissioner, and offered only one exhibit (plaintiff's job evaluation) in the three days of hearings. All of the witnesses offered by plaintiff, and their statements, were readily available to defendants to consider in their investigation and subsequent denial of this matter. Most of the 21 documentary exhibits entered into evidence by plaintiff were readily available to defendants for investigation, if one had been properly undertaken. When asked by the Deputy Commissioner why he was defending this case, counsel replied, "We don't know what happened."

47. Defendants possessed documents that confirmed plaintiff accounts of the attack, which they refused to make available to the plaintiff. She was required to file a Motion to Compel to obtain such documents.

***

49. As a result of defendants' failure to perform a reasonable investigation of this matter, and based upon defendants' refusal to admit plaintiff was even assaulted, despite eyewitness testimony, plaintiff was required to prosecute a three day hearing, presenting at least ten witnesses and twenty-one exhibits. Thus, the Full Commission finds defendants' defense of this matter was based on stubborn, unfounded litigiousness.

50. As a result of defendants unreasonable and unjustified defense òf his (sic) matter, and their pattern and practice of unreasonable defense and bad faith, the Full Commission finds that an award of twenty-five percent (25%) of the total indemnity benefits recovered is reasonable.

The record indicates that Defendants presented no witnesses at the hearing before the Deputy Commissioner. But the record does show that Defendants issued a subpoena for Mr. Greene and had it delivered to the sheriff. The transcripts from Mr. Greene's criminal trials were entered into the record. The record shows that the Deputy Commissioner admitted seven exhibits offered by Defendants, not one as finding of fact number forty-six indicates. Also Defendants' counsel did state that Defendants did not know what happened as they questioned Ms. D'Aquisto's credibility. Despite the mistake regarding the number of exhibits submitted by Defendants, there is competent evidence to support the remainder of finding of fact forty-six.

The record shows that there is competent evidence to support finding of fact forty-seven. On 14 October 2002, the Deputy Commissioner filed an Order for Production of Documents. The order stated that it "now appear[ed] defendants [had] failed to comply with the standing bench order to produce the Risk Management records and file[.]" There is also evidence in the record to support the finding that Defendants failed to perform a reasonable investigation causing the hearing to last three-days and depose six other witnesses. At the hearing, the Deputy Commissioner stated that:

MR. TARLETON: I've been practicing before [the Industrial Commission] for twenty years and I've never had [a motion for discovery] allowed.

THE COURT: Have you ever asked me?

MR. TARLETON: No, sir, I have not.

***

THE COURT: . . . Mr. Ramer [Plaintiff's counsel] had to file Motions with me just for me to order you to turn over some documents. Then I had come up (sic) and do an in-camera inspection of things that didn't make any difference anyway. Then you attacked the Constitution of the United States on the due-process clause.

MR. TARLETON: Well, I certainly am not attacking the Constitution of the United States. I am invoking the Constitution of the United States.

THE COURT: I'll use the word "invoking" the Constitution of the United States. Then you say here today almost, "We don't think we should turn over things because is (sic) no discovery." And we've been discovering in—in workers' comp cases the history of the Industrial Commission. People do that all the time.

MR. TARLETON: You've—you've experienced a different history than I have. I can tell you that.

THE COURT: You don't do any discovery in your workers' comp case?

MR. TARLETON: I do my best and—and I've given up trying to ask for leave to depose a plaintiff. I'll never get that. I can assure you of that. . . .

This exchange indicates that Defendants' counsel inhibited discovery and failed properly to investigate by not even making a motion for discovery, due to his anticipation of its being denied. Therefore, there is competent evidence to support findings of fact forty-nine and fifty. As there was competent evidence to support the findings of fact, the full Commission did not abuse its discretion in awarding costs and attorney's fees, as the findings were not manifestly unsupported by reason. *Troutman*, 121 N.C. App. at 54-55, 464 S.E.2d at 486.

[5] Next, Defendants argue that the full Commission impermissibly placed on them the burden to prove that Ms. D'Aquisto had not been assaulted. The plaintiff has the burden of proving that the claim is compensable, which includes proving that the accident occurred. *Henry v. A. C. Lawrence Leather Co.*, 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). Defendants reference multiple pages in the hearing transcript before the Deputy Commissioner for support of their contention, however, they fail to cite any part of the full Commission's Opinion and Award that demonstrates the full Commission impermissibly shifted the burden of proof. We have carefully reviewed the

entire record and find nothing to indicate that either the Deputy Commissioner or the full Commission improperly placed a burden of proof on Defendants. In fact when discussing Defendants' theory that no assault actually occurred, Defendant's counsel stated, "I don't believe I have the burden to prove that scenario." The Deputy Commissioner responded, "I agree." The Deputy Commissioner understood that Ms. D'Aquisto had the burden to prove all elements of compensability. We find no error.

[6] Next, Defendants contend that the full Commission applied the incorrect standard of proof by using the appellate review standard of "any competent evidence." Defendants argue that this is evident in the full Commission accepting evidence favorable to Ms. D'Aquisto and discounting evidence in favor of them. This is not a standard of proof, but a credibility determination which is solely the responsibility of the full Commission. *Adams*, 349 N.C. at 681, 509 S.E.2d at 413. Furthermore, "the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. We find this argument to be without merit.

Next, Defendants argue that the full Commission's adoption of portions of Ms. D'Aquisto's proposed opinion and award is a failure to properly weigh the evidence. Since Defendants failed to cite any authority to support this argument, it is deemed abandoned. N.C. R. App. P. 28(b)(6).

[7] Finally, Defendants contend that Rule 601 of the Workers' Compensation Rules impermissibly shifts the burden of proof and denied them due process. We disagree.

Rule 601 of the Workers' Compensation Rules provides in pertinent part:

> The detailed statement of the basis of denial shall set forth a statement of the facts, as alleged by the employer, concerning the injury or any other matter in dispute; a statement identifying the source, by name or date and type of document, of the facts alleged by the employer; and a statement explaining why the facts, as alleged by the employer, do not entitle the employee to workers' compensation benefits.

Defendants argue that "Rule 601's requirement of an employer to come forward with any evidence to rebut a plaintiff's claim effectively shifts the burden of proof to the employer at the outset

IN RE D.J.D., D.M.D., S.J.D., J.M.D.

[171 N.C. App. 230 (2005)]

of a claim and deprives the employer of procedural due process." (Def. Br. 30).

The General Assembly has specifically vested the North Carolina Industrial Commission with the ability to make rules governing Workers' Compensation cases. N.C. Gen. Stat. § 97-80 (2004) ("The Commission may make rules, not inconsistent with this Article, for carrying out the provisions of this Article."). Furthermore,

> [t]he North Carolina Industrial Commission has the power not only to make rules governing its administration of the act, but also to construe and apply such rules. Its construction and application of its rules, duly made and promulgated, in proceedings pending before the said Commission, ordinarily are final and conclusive and not subject to review by the courts of this State, on an appeal from an award made by said Industrial Commission.

*Winslow v. Carolina Conference Ass'n of Seventh Day Adventists*, 211 N.C. 571, 579-80, 191 S.E. 403, 408 (1937). Rule 601 was duly made and promulgated and therefore is presumed valid. Defendants make no specific arguments as to how Rule 601 denies them procedural due process nor do they cite any authority. We find this argument to be without merit, as Rule 601 was properly enacted.

Accordingly, we find no error by the full Commission and affirm the Opinion and Award.

Affirmed.

Chief Judge MARTIN and Judge McGEE concur.